Alfred *vs.* The State of Georgia.

THOMAS J. ALFORD, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. A judgment will not be reversed for an erroneous decision, which works no injury or injustice to the plaintiff in error.
2. Testimony improperly rejected by the Court, and then offered by the other party, and objected to by the side at first insisting on its introduction, is no error for which he can complain.
3. It is error in the Court to allow testimony taken down, under the statute, to be discredited by showing that the penman performed the duty in an inexpert and bungling manner.
4. *Ex parte* and voluntary depositions, taken in a collateral matter, cannot be read as evidence, though the witnesses be dead or absent in the public service.
5. To charge the jury that, if two persons arm themselves on account of their quarrel, and both draw, it is quite immaterial which fired first, there is malice aforethought in each, and the slayer is guilty of murder, is error.
6. So, also, it is error to charge the jury in the following language: "By the laws of Georgia it is forbidden to carry deadly weapons secretly. If, in violation of the law, one arm himself with a deadly weapon, and in a fight kill his adversary, it will be murder." It being the opinion of this Court that the law does not necessarily, and under all circumstances, attach malice to the secretly carrying deadly weapons.

Indictment for murder, in Washington Superior Court. March Term, 1862. Honorable WILLIAM W. HOLT, presiding.

As the Court did not pass upon the evidence in this case a statement of it is deemed useless. A statement of the points will be found in the opinion of the Court as pronounced by Judge Lumpkin.

H. V. JOHNSON, and BAILEY & DEGRAFFENRIED, for plaintiff in error.

W. W. MONTGOMERY, Solicitor General, *contra.*

*By the Court*—LUMPKIN, J., delivering the opinion.

We should not feel inclined to notice the minor points in this case, but having determined to award a re-hearing, it becomes necessary to do so by way of direction on the next trial. As it is, we shall dispose of them very briefly.

1. It is complained that the Court refused to allow the prisoner to give in evidence the whole of a conversation between himself and the witness Heath. Heath testified to threats of prisoner against the deceased, but was not allowed to prove the cause of those threats as stated by Alford in the same conversation; all that the prisoner said at the time relating to the same subject matter should have gone to the jury. But in as much as the parts suppressed would have constituted no legal justification for the homicide, however natural the resentment of Alford against Kittrell for the supposed injury done his brother, we would not for this reason have reversed the judgment.

2. So of the second ground of alleged error. Prisoner's counsel proposed to read the testimony of two of the witnesses, Brown and Heath, taken down by the Court at a former attempt to try this case, for the purpose of impeaching their credit. Parts of the testimony taken down on the mistrial were read to the witnesses, and their attention particularly called to them. Such parts the Court permitted counsel to read, but refused to allow them to read the balance. In this also we hold there was error. It being the sworn evidence of the witnesses, there was no reason, according to the rule established in the Queen's case, that it should be exhibited to the witnesses in order to lay the foundation for impeaching their credit. But when the Attorney General offered to read the whole of the former evidence of these witnesses, which was in turn objected to by counsel for prisoner, the error was cured. And the defendant cannot complain that he was hurt by the previous decision. The maxim of the law being *volenti non fit injuria*.

3. Was the Court right in allowing the State to introduce A. D. Jernigan, the Clerk, to prove that Mr. Knight, who

Alford *vs.* The State of Georgia.

acted as the amenuensis of the Court in taking down the testimony of Brown and Heath, given on the mis-trial at a preceding term, did it in an inexpert and bungling manner? We think not.   It is the duty of the Court to have the testimony of each witness, after it is written, carefully read over to the witnesses, and the mistakes corrected, if there be any, so that the objects of the statute should not be defeated. When thus examined and assented to it should speak the truth—the whole truth, and nothing but the truth.   Liberty, and even life itself, may depend upon the faithful performance of this duty.   To permit any particular fact thus solemnly verified to be subsequently called in question, would lead to great inconvenience.   But to suffer the whole of it to be discredited by proving the inexpertness of the Court's penman would lead to incalculable mischief.   An incompetent, or even slovenly writer, should never be employed for this business.

4. During the progress of the trial a proposition was made by counsel for the prisoner to read in evidence to the jury, the affidavits of Phillips, Carey and Wright, made in open Court at a former term, on a motion to bail prisoner, the said Phillips having since died, and the said Carey and Wright being absent in the military service of the Confederate States in the State of Virginia; and the said affidavits being made after counsel for prisoner proposed to put the witnesses on the stand, to be orally examined by the Court and State's Attorney, but which the Court declined to do, requiring that the affidavits should be submitted in writing, which was accordingly done, the Attorney General being permitted to inspect said affidavits, the same being taken and sworn to in open Court.

This testimony was rejected, and we think properly.   For after all, the affidavits were *ex parte* voluntary depositions, not made as evidence in the case, but for a collateral purpose, and the witnesses not subjected to a cross-examination.   That the showing would have constituted a sufficient ground for a continuance of the case we entertain no doubt.   But the defendant preferred risking a trial rather than submit to further

imprisonment. After all, when we consider that the prisoner was deprived of the testimony of two of his witnesses by the public, and the third died in the service of the country, it would seem that some legislation was needed in such a case. Indeed, would it not be expedient to provide a mode for taking testimony in all State cases where it was impossible for the prisoner to procure the personal attendance of the witnesses? In all public prosecutions the witnesses for the State must be confronted with the accused. Is it consistent with the humanity of the law that parties should be compelled to elect between a protracted, not to say perpetual imprisonment, or a trial in the absence of material testimony, especially when the witnesses are absent in the public service.

So much for the mint, anise and cummin of this case. We now proceed to consider the weightier matters of the law involved in it.

As to the office of the Judge and jury in criminal trials, and the reference of the Circuit Judges to another tribunal, we have said all that we care to say upon these subjects.

5. In the course of his charge to the jury, the presiding Judge stated, amongst other things, " that if they should find from the evidence that the prisoner and Kittrell armed themselves on account of their quarrel, and both drew, it was quite immaterial which fired first, there is malice aforethought in each, and the slayer is guilty of murder." We hold this proposition to be untenable. I hear that my adversary has threatened my life ; I arm myself for defence ; we meet, and mutually draw our weapons ; he fires first, and I kill him. Is this murder in me? I apprehend not. His Honor added, " by the laws of Georgia, it is forbidden to carry deadly weapons secretly. If in violation of this law, one arm himself with a deadly weapon, and in a fight kill his adversary, it will be murder, and especially so if the slayer be the aggressor. Malice will be implied from the unlawful act of thus arming." This we deem the fatal error in this case. For it is a fact not disputed, that Alford armed himself secretly with a deadly weapon, and in the fight with Kittrell, who the weight of testimony shows shot first, and Alford

Alford *vs.* The State of Georgia.

killed him. All this is conceded. There was nothing left, then, for the jury but to write a verdict of guilty without leaving their box. They were precluded by this charge from examining the testimony, for no view which they might take of it could change the result. And it will be perceived, that had Kittrell killed Alford it would have been equally murder in the opinion of the Court. This we respectfully submit cannot be true.

Suppose the jury should find from the proof that notwithstanding the threat of Alford, the fatal interview was sought by Kittrell. At any rate, that he unnecessarily threw himself in the way of Alford, that an altercation ensuing he drew his pistol and fired first upon his adversary, when Alford took his life. Might they not conclude that the result was produced by the excitement of the moment, and not from malice aforethought in Alford ? Should the jury not have been allowed at least to examine the evidence in this and various other aspects which might have been presented of this fatal transaction ? And is there any such procrustean rule of law which attaches such consequences to the secretly arming with deadly weapons, no matter for what purpose ? Does the secretly carrying a deadly weapon import malice under all circumstances ? We have not so understood the statute. In defiance of the law, deadly weapons are secretly worn by nine-tenths of our people, for offence or defence. It may be to kill a mad-dog or a mad-man, as occasion may demand. A policeman secretly arms himself for his night watch, and in a struggle with a burglar, kills him. For this, the State makes the individual indictable and punishable. But it never occurred to the framers of this Act, that if a citizen was slain the law imputed malice to the homicide, no matter under what circumstances the killing took place, and would listen to no explanation. But we have said enough to make ourselves understood, and forbear to press this point any further.

We deem it improper to express any opinion upon the evidence.

A new trial is granted upon the grounds indicated.

Let the judgment be reversed.